IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JONATHAN RAWSHIELD HILL,
     Petitioner,

vs.                                                   Case No.:  4:19cv95/WS/EMT

MARK S. INCH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 13).  Respondent filed an answer and relevant portions of the state court record (ECF No. 19).  Petitioner filed a second amended reply (ECF No. 23).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 19).[1]  Petitioner was charged in the Circuit Court in and for Leon County, Florida, Case No. 2009-CF-1304, with one count of burglary of a dwelling with an assault and while armed (Count I) and one count of grand theft (of $100 to $300 value) from a dwelling or curtilage (Count II) (Ex. A at 29).  A jury trial was held on July 12, 2016 (Exs. C, D).  The court granted Petitioner's motion for judgment of acquittal on Count II to the extent the charge was reduced to petit theft (Ex. D at 148–51).  The jury found Petitioner guilty of both charges, with specific findings as to Count I, that Petitioner committed an assault and was armed with a dangerous weapon during the burglary, and the burglarized structure was a dwelling (Ex. A at 284–85).  On August 12, 2016, the court sentenced Petitioner as a prison releasee reoffender to life imprisonment on

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 19).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Count I, with pre-sentence jail credit of 861 days, and essentially time served on Count II (Ex. A at 299–309, 318–48).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D16-3769 (Ex. J). The First DCA affirmed the judgment per curiam without written opinion on December 14, 2018 (Ex. M). *Hill v. State*, 258 So. 2d 394 (Fla. 1st DCA 2018) (Table). The mandate issued January 4, 2019 (Ex. M). On January 8, 2019, Petitioner filed a pro se "Notice of Appeal" in the First DCA, which the First DCA transmitted to the Supreme Court of Florida as a petition for review (Ex. N). The state supreme court assigned Case No. SC19-75, and dismissed the petition for lack of jurisdiction on January 17, 2019 (Ex. O). *Hill v. State*, No. SC19-75, 2019 WL 245209, at *1 (Fla. Jan. 17, 2019) (Table). Also on January 8, 2019, Petitioner filed a petition for writ of habeas corpus in the state supreme court (Ex. P). The state supreme court assigned Case No. SC19-56, and dismissed the petition for lack of jurisdiction on January 14, 2019 (Ex. Q). *Hill v. State*, No. SC19-56, 2019 WL 181337, at *1 (Fla. Jan. 14, 2019) (Table). Undeterred, Petitioner filed, on January 28, 2019, a Notice to Invoke Discretionary Jurisdiction in the First DCA, again seeking review of the First DCA's affirmance of the judgment (Ex. R). The First DCA transmitted the Notice the state supreme court (*id.*). The state supreme court assigned Case No. SC19-183, and dismissed the

Notice for lack of jurisdiction on February 6, 2019 (Ex. S). *Hill v. State*, No. SC19-183, 2019 WL 586343, at *1 (Fla. Feb. 6, 2019) (Table).

On February 28, 2019, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. HH at 52–65). In a non-final order rendered on March 13, 2019, the circuit court summarily denied two of Petitioner's three claims (*id.* at 100–01). The court set an evidentiary hearing on Petitioner's third claim (Ex. LL).

Petitioner filed the instant federal habeas action on February 14, 2019, during the pendency of the Rule 3.850 proceeding (ECF No. 1). Petitioner filed an amended petition, which is the operative pleading, on April 17, 2019 (ECF No. 13).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)**    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly

established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, *Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by

the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claim. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One:  "The trial court erred in denying the motion to suppress evidence where there was no testimony from the officer who made the stop and no founded suspicion to support the *Terry* stop of the defendant and the laptop was seized in violation of the Fourth Amendment to the United States Constitution."

Petitioner contends the trial court erred in denying his motion to suppress evidence of a laptop computer seized by law enforcement officers after they stopped Petitioner, on the ground that the officers had no articulable, reasonable suspicion to conduct a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889

(1968) (ECF No. 13 at 7–11).[2]  Petitioner alleges the officer who conducted the stop (Officer Finales) did not testify at the suppression hearing (*id.*).  Petitioner alleges Officer Malafronte was the only officer who testified, but his testimony was insufficient to show that Officer Finales had articulable, reasonable suspicion to stop Petitioner (*id.*).  Petitioner contends the trial court erred by denying the motion to suppress (*id.*).

Petitioner asserts he presented this issue on direct appeal to the First DCA (ECF No. 13 at 12).  Petitioner states he also presented the claim in his Rule 3.850 motion, but the court denied it on state procedural grounds, i.e., it could have and should have been presented on direct appeal (*id.*).

Respondent contends Petitioner's claim is not cognizable on federal habeas review, pursuant to *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) (ECF No. 14 at 26–33).

In Petitioner's reply, he repeats his contention that there was an insufficient basis to deny the motion to suppress, because Officer Finales did not testify at the suppression hearing, and Officer Malafronte's testimony was purely hearsay (ECF

---

[2]  When referencing the parties' pleadings, the court refers to the page numbers automatically assigned by the court's electronic filing system.

No. 23 at 1–5).  Petitioner also argues the merits of his Fourth Amendment claim (*id.*).

The *Stone v. Powell* doctrine provides:  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494 (footnotes omitted).   The *Stone* Court found that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force."  *Id.* at 494–95 (footnote omitted).  "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."  *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) (internal quotation marks and citation omitted).

A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact.  In *Tukes v. Dugger*, the Eleventh Circuit addressed whether *Stone* foreclosed review of the validity of a search when the defendant

presented his argument, but the state courts failed to make findings of fact to resolve that argument.   911 F.2d 508, 513–14 (11th Cir. 1990).   The Eleventh Circuit concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make any findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home.   The court stated, "The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim." *Id.* at 514.

Here, the undersigned agrees with Respondent that this court's consideration of the Fourth Amendment claim is foreclosed *by Stone v. Powell*.   The state court record demonstrates that on November 3, 2015, Petitioner filed a motion to suppress a laptop computer which was seized from him after law enforcement officers conducted a *Terry* stop on April 25, 2009 (*see* Ex. A at 144–48, 176–79).   The trial court held an evidentiary hearing on the motion to suppress on January 8, 2016 (*id.* at 169–233).   The parties had an opportunity to present evidence on the Fourth Amendment issue (*see id.* at 169–233).   The State presented testimony from Officer

Michael Malafronte (*id.* at 179–86, 197–98).   Petitioner, who was representing himself, cross-examined Officer Malafronte (*id.* at 186–97).[3]   The trial court provided Petitioner an opportunity to present evidence, and Petitioner presented his own testimony (*id.* at 198–210).[4]   The court heard arguments from the State and Petitioner on the Fourth Amendment issue (*id.* at 213–28).   At the conclusion of the suppression hearing, the trial court made findings of fact on the record about whether the *Terry* stop of Petitioner was supported by articulable reasonable suspicion:

> THE COURT:  Okay.  Well, Mr. Hill, I'm going to deny your motion.  I certainly would have preferred to have the State present somebody who knew what the details were of the BOLO.  And perhaps it's a reasonable inference that the description given in Officer

---

[3] Following a *Faretta* hearing on July 27, 2015, the trial court determined that Petitioner knowingly and intelligently waived his right to counsel, but the court maintained Attorney Bill Sharpe as standby counsel (*see* Ex. E).  At the commencement of the suppression hearing on January 8, 2016, the court again conducted a *Faretta* inquiry and determined that Petitioner still knowingly and intelligently waived his right to counsel (Ex. A at 174–76).

[4] Petitioner indicated he had previously filed a motion to subpoena and depose his co-defendant, Marcus Ricketts (Ex. A at 205–07, 210–12).  Petitioner asserted Mr. Ricketts would corroborate Petitioner's testimony that Ricketts gave Petitioner the laptop in exchange for marijuana and $30 cash (*id.* at 204–07).  The trial court noted on the record that Petitioner had filed, in September of 2015, a "Motion to Subpoena & Deposition Codefendant" (Ex. A at 210, *see also id.* at 117–18).  The court noted that it disposed of Petitioner's motion as follows:

> The Defendant does not need court approval to engage in discovery, including the issuance of subpoenas for depositions.  To the extent the motion is requesting that the court act on behalf of the Defendant in making such discovery, it is denied.

(Ex. A at 210, *see also id.* at 121).  At the suppression hearing, the court reminded Petitioner that the court had warned him that navigating the discovery process pro se from jail was extremely difficult, but Petitioner had knowingly and intelligently chosen to do so (*id.* at 211–12).

Finaless's [sic] thing by inference would be what he was told. But even without that I think it was reasonable based upon a couple of things.

One is the officer responded unusually quickly. Almost right after the burglary was committed. The victim had pointed in the direction that the two suspects ran and the officer stopped you.
. . . .
And the officer stopped you within two to three minutes after the burglary.
. . . .
And regardless of what the description was, somebody with a laptop, and you had a wall charger attached to it. Now, if it had been two days later or even two hours later, some different part of town, I'd say, yeah. I mean, people can walk around with a laptop in their hands with no case or no nothing and a wall charger attached to it. It's a pretty unusual scene, to be within minutes of a burglary where a laptop has been stolen. I think it was perfectly reasonable for them to stop you to at least ascertain what you're doing with this laptop. And so that's why I'm denying your motion.

(Ex. A at 228–29).

On direct appeal to the First DCA, Petitioner argued as Ground IV that the trial court erred in denying the motion to suppress (Ex. J at 40–45). Petitioner argued that Officer Finales did not testify at the suppression hearing, and there was no founded suspicion to support the *Terry* stop; therefore, the officers' stopping Petitioner and seizing the laptop violated the Fourth Amendment (*id.*). This was the same argument presented to the trial court and adjudicated at the suppression hearing. The appellate record included the motion to suppress and a transcript of the

evidentiary hearing.  The state appellate court summarily affirmed the trial court's ruling on the suppression issue (Ex. M).

Petitioner was provided "full and fair" consideration of the Fourth Amendment issue in the state courts.  Although the state appellate court issued only a summary affirmance, the trial court made explicit oral findings on matters essential to the Fourth Amendment issue, based upon the evidence adduced at the evidentiary hearing.  Petitioner was thus provided consideration by the fact-finding court, and meaningful appellate review by a higher state court.[5]  Under *Stone v. Powell*, this federal court is precluded from considering Ground One.

B.    Ground Two:  "The trial court abused its discretion in denying the Petitioner's motion for continuance."

Petitioner alleges he filed a motion for continuance on June 28, 2016, just 13 days prior to trial (ECF No. 13 at 14–17).  Petitioner alleges he was proceeding pro se at the time and required a continuance due to "the late disclosure of discovery," his inability to secure defense witnesses, and the "late entrance" of standby counsel (*id.* at 14).  Petitioner alleges the trial court held a hearing on the motion for

---

[5] *See, e.g., Judkins v. Hardy*, No. 12-C-4111, 2013 WL 2156038, at *8 (N.D. Ill. May 17, 2013) (applying *Stone* where trial court made oral ruing on Fourth Amendment issue at suppression hearing, and petitioner had opportunity to raise Fourth Amendment claim on direct appeal); *Dabbs v. Crosby*, No. 3:03cv953J12MCR, 2005 WL 2456220, at *13 (M.D. Fla. Oct. 5, 2005) (applying *Stone* where trial court made oral ruing on Fourth Amendment issue at suppression hearing, and state appellate court affirmed trial court's decision on direct appeal).

continuance on the day of jury selection (*id.* at 14–15).  Petitioner alleges the court denied the motion and told him to decide whether he desired representation by counsel or wished to proceed entirely without counsel (i.e., not even with standby counsel) (*id.* at 15).  Petitioner contends the trial court's denial of his motion for continuance was an abuse of discretion and violated his rights under the Sixth Amendment (*id.* at 14–17).

Petitioner asserts he presented this issue on direct appeal to the First DCA (ECF No. 13 at 14).  Petitioner states he also presented the claim in his Rule 3.850 motion, but the court denied it on state procedural grounds, i.e., it could have and should have been presented on direct appeal (*id.* at 14–15).

Respondent "presumes" Petitioner fairly presented the federal constitutional nature of his claim to the state courts, and Respondent asserts that the state courts adjudicated the merits of the claim (ECF No. 19 at 38–39).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, nor did the adjudication rest upon an unreasonable determination of the facts in light of the evidence presented (*id.* at 39–47).

      1.     Clearly Established Federal Law

"Broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)).

In *Slappy*, petitioner Slappy contended the trial court abused its discretion and denied his right to counsel when it denied his pro se motion for a continuance to allow better preparation by his attorney, who had been appointed to represent Slappy six days prior to trial when his original appointed counsel had taken ill. The Supreme Court held that the trial court did not abuse its discretion, and Slappy was not denied right to counsel, because substitute counsel had promptly taken original counsel's place, substitute counsel had properly studied the investigation and carefully reviewed trial materials prepared by original counsel, substitute counsel had conferred with Slappy for several hours, and substitute counsel made unequivocal and uncontradicted statement that he was fully prepared and "ready" for trial. 461 U.S. at 13.

### 2.    Federal Review of State Court Decision

The state court record demonstrates that at Petitioner's arraignment on June 5, 2009, he indicated he would hire private counsel, but at a pretrial hearing on

August 6, 2009, he requested appointment of counsel (*see* Ex. A at 34). The court appointed counsel for Petitioner (*see id.* at 36, 37). The court adjudicated Petitioner incompetent to proceed from May 4, 2011, to November 3, 2014 (*see* Exs. F, Ex. G). Attorney Bill Sharpe was representing Petitioner when he was adjudicated competent (*see* Ex. G). At a case management conference on June 15, 2015, Attorney Sharpe announced he was ready for trial (*see* Ex. G at 399–402). Jury selection was set for July 27, 2015, and trial was set for August 10, 2015 (*see* Ex. E at 357–65). Four days prior to jury selection, Petitioner filed a motion for a *Faretta* hearing, stating he wished to discharge Sharpe and represent himself (Ex. A at 106–07). On July 27, 2015, the trial court conducted a *Faretta* hearing and determined that Petitioner knowingly and intelligently waived his right to counsel; but the court maintained Attorney Sharpe as standby counsel (Ex. E at 357–80). Petitioner withdrew his demand for speedy trial, and requested a 120-day continuance to prepare for trial (*id.* at 368–69, 375). The court set the matter for a case management conference on August 6, 2015 (*id.* at 376).

Over the course of the next year, Petitioner filed numerous pre-trial motions, and the court held numerous pre-trial hearings and conferences (*see* Ex. A, Docket Report of Case Process). The record shows that Petitioner raised discovery-related issues on two occasions during this time. In September of 2015, Petitioner filed a

"Motion to Subpoena & Deposition Codefendant," indicating he wished to depose co-defendant Marcus Ricketts, "police officers," and "victims" (Ex. A at 117–18). Petitioner also filed a "Motion to Take Deposition to Perpetuate Testimony" of Marcus Ricketts, Officer Finales, Officer Malafronte, Manuel Fente (the victim), and Carlos Sirgo (an eyewitness) (*see id.* at 124–25).  The trial court issued an order advising Petitioner he did not require court approval to engage in discovery, including issuance of subpoenas for depositions; and to the extent Petitioner was requesting that the court act on his behalf in conducting discovery, the court denied the request (*id.* at 121).  The court denied the "Motion to Take Deposition to Perpetuate Testimony" on the ground that the witnesses could appear at trial, and Petitioner failed to show the need to perpetuate the testimony of any witness (*id.* at 135).

As previously noted, Petitioner raised the same discovery issue at the suppression hearing on January 12, 2016 (*see* Ex. A at 206–07, 210–12).  The trial court reiterated that Petitioner did not require court approval to conduct discovery, and the court could not act on his behalf in conducting discovery (*id.*).  The court reminded Petitioner that one of the disadvantages of representing himself while in jail was his limited ability to conduct discovery (*id.* at 210–12).

At a hearing on May 17, 2016, the court set the case for a pre-trial hearing on June 23, 2016, and trial on July 11, 2016.  At the pre-trial hearing on June 23, the court reaffirmed Petitioner's decision to proceed pro se, and maintained Attorney Joshua Brian as standby counsel (Attorney Brian had substituted in for Attorney Sharpe).  On June 27, 2016, Petitioner filed a motion for continuance to enable him to depose the officers, victims, and co-defendant Ricketts (Ex. A at 259–60). Petitioner also stated he was in the process of serving a subpoena duces tecum upon the State (*id.*).

The court addressed Petitioner's motion for continuance at the commencement of jury selection on Monday, July 11, 2016 (Ex. B at 4–9). Petitioner asserted the following grounds for his request for a continuance:  (1) insufficient time between his arraignment (on June 11, 2009) and the trial date (July 11, 2016), (2) late disclosure of evidence, (3) inability to secure defense witnesses by the time of trial, and (4) the "late entrance" of standby counsel (*id.* at 4–5). Standby counsel Attorney Brian advised the court that he prepared the case file for trial and personally gave Petitioner all of the discovery the previous Friday, July 8 (*id.* at 5).  Attorney Brian stated he was able to proceed as counsel if Petitioner or the court desired that he do so (*id.*).

The prosecutor opposed the continuance on the grounds that (1) the case the seven years old, albeit Petitioner was deemed incompetent for approximately four years; (2) more than one year had passed since Petitioner was declared competent; (3) the defense had requested five continuances, whereas the State had requested none; (4) the victim, the eyewitness, and the arresting officer were in Miami preparing to board a plane that afternoon to attend trial in the morning; (5) none of the evidence was recently disclosed—it had all been disclosed well prior to jury selection; (6) Petitioner had more than sufficient time to provide names of any defense witnesses; and (7) Attorney Brian was ready for trial if called upon to stand in (Ex. B at 6–7).

The trial court denied Petitioner's motion for continuance as follows:

> Well, I'm going to deny the defense request to continue.  In just a second, we're going to take a break here.  I'll give you [Petitioner] a chance to talk to Mr. Brian, and give you a chance to discuss further whether you want him to represent you at trial.

> But if you don't want him to represent you, I'm going to relieve Mr. Brian of any further responsibility in the case.  We're not going to have standby counsel.  I'm not going to give you standby counsel, and then you use that as an excuse of why you're not ready to proceed.

> Either Mr. Brian is going to represent you, or you're going to represent yourself.  There's going to be no standby counsel.

> I will give you a few minutes to talk with him.  I know you wanted to go to the restroom.  We will let him go to the restroom.

>       Mr. Brian, if you would stand by and discuss with him what's
>       going to happen at trial. If he continues to not want you to represent
>       him, you're excused.

(Ex. B at 8–9). After the break, Petitioner announced he wished to have Attorney

Brian represent him during trial (*id.* at 11). Attorney Brian announced he was ready

to proceed (*id.* at 12). Attorney Brian represented Petitioner throughout jury

selection and trial (Exs. B, C, D).

Three days after trial, Petitioner filed a pro se "Motion Requesting for [sic]

Appointment of Conflict Free Counsel/Pro Bono Counsel to File Motion for New

Trial," alleging numerous perceived deficiencies in Attorney Brian's representation

at trial (Ex. A at 289–91, 293–95). At the commencement of sentencing on August

12, 2016, Petitioner addressed the court, outlining each of these perceived

deficiencies in Attorney Brian's performance (Ex. A at 320–26). Attorney Brian

responded to Petitioner's allegations as follows:

>       As far as [Petitioner's allegation that] I didn't understand the
>       facts of his extraordinary case, that allegation—his case is actually a
>       very simple case. It's a simple burglary with a person assaulted. The
>       facts are very easy to grasp in his case. I had all the discovery, case
>       law, things of that nature, so no issues there.
>
>       Number two, failure to interview State witnesses before trial;
>       number one, Mr. Hill decided to have a lawyer five minutes before jury
>       selection, and he told me, specifically, when we were meeting here in
>       the courtroom that the purpose of asking for me to be his lawyer five

minutes before trial was to make a claim of ineffective assistance of counsel at a later point in time.

However, I would not have interviewed any of the witnesses anyway in this particular case, and the reason for that is it prepares them to testify against Mr. Hill at trial. What we saw at this particular trial was pretty amazing. The victim, Manuel Fente, actually transposed Mr. Hill with the co-defendant, to the point where the State had to concede he was wrong when he testified in their closing statements to the jury. If I had gone off and done a deposition of Mr. Fente, they would have fixed that problem before we ever got to trial. And so, it worked out much better not to have fresh memories on the witnesses.

Number three, failure to cross-examine TPD officers Malfronte [sic] and Officer Finales, I did cross-examine them in full and I also gave Mr. Hill a chance to tell me what questions he thought I should ask them, before I stopped questioning them on the stand. And so there shouldn't be any issue there, I absolutely cross-examined them and gave him an opportunity to tell me any questions he thought I should ask.

Number four, I misadvised Mr. Hill to take the stand. Mr. Hill represented to me he always wanted to take the stand and tell his side of the story, and even said that before he testified to me when we were talking about whether he should testify. Also, testifying did help him explain the possession of recently stolen property, and cut down on the guilty inference in the jury instruction, which is valid under *Walker v. State*, 896 So. 2d 712, Florida, 2005, which is from the Florida Supreme Court.

If he had failed to testify, I would have objected to the jury instruction on possession of recently stolen property and attacked it under a new route, which would have been a comment on the Defendant's right to remain silent since the United States Supreme Court has expanded the breadth of how that is assessed. However, I don't think that would have fixed anything in this case, but I certainly would have objected to the instruction.

Number five, failure to play the 911 tape after the State rests its case.  First off, the 911 tape is hearsay and it would need an exception.  But number two, why would I play a tape that had that can [sic] correct the mistakes that Manuel Fente made on the stand?  He completely botched his testimony on the stand, the State's primary witness.  And so introducing a tape with more accurate statements made closer to the time of the offense merely helps the State's case.  So that's not going to be something that I would have done.

Number six, there wasn't a question number six on his form, he just went up to seven, after four and five.  So number seven, failure to properly impeach Manuel Fente and Carlos Sirgo.  Again, as I've stated, they completely messed it up on the stand and so I don't know if he wants me to correct their statements on the stand with their out-of-court statements that they made previously that make him more guilty?  But that would have been an absurd tactical decision.

Number eight, failure to object to the Defendant's recorded interview because the State did not disclose it.  The State disclosed the recorded interview seven years before trial.  I had an opportunity to review the entire recorded interview.  I filed a motion in limine indicating there were certain objectionable parts, to which I notified the State of ahead of time, and the State went through and edited an extremely long interrogation video into about two-and-a-half minutes to remove every objectionable part that I found in the video; which I can't understand that argument that it wasn't disclosed because it was.  And you know, I—in fact, I know the facts in Mr. Hill's case better than he does because I've seen the videos that he's never had the opportunity to see.

. . . Failure to depose witnesses, I've already gone over that issue.  Again, I became his lawyer five minutes before trial and he told me it was to claim ineffective assistance of counsel, but I wouldn't have deposed them anyway under this case and that worked out to his favor.

In fact, during the trial, Mr. Hill pointed out to me repeatedly, he was like, why, dog, you downplay yourself, you raw as Hell, dog.  He kept telling me that because he was really pleased with how the examination of the witnesses went.  In fact, before the jury went out to deliberate, he was so certain he wasn't going to be convicted, he was extremely happy with my representation.

Failure to exclude Officer Reynaldo Finales at trial because he didn't show up to the suppression hearing.  That's absurd.  Being appointed at the last minute, I failed to anything [sic] in his case.  I represented him entirely through trial, I obtained all discovery, reviewed all discovery, prepared it; gave motions, as far as motions in limine to the State to remove parts of the video that the Defendant had never once ever seen.  I even reviewed the MAVRICS video of the traffic stop of his sister and her friend, which was incriminating towards the Defendant.  And, you know, so again, I've seen things that he hasn't even seen in his case.  I had more factual knowledge about his case than he did.

THE DEFENDANT:  Cause [sic] I didn't have—

THE COURT:  Mr. Hill, be quiet.

MR. BRIAN:  Let's see.  I never told the jury that he was guilty.  He said that I told them that he was guilty.  I never conceded his guilt under any circumstances.  This was not a *Nixon* defense case [where we] never discussed his defense; we did discuss his defense his defense was he didn't do it, so that was discussed and that's what was argued.

The statute of limitations claim, he was arrested and prosecuted the very same night the burglary happened, so that's obviously within four years.  So there's no statute of limitations problem here.

Failure to ask for a continuance.  I didn't need a continuance in his case.  And quite frankly, I think that the only reason he wanted a lawyer to ask for a continuance was so that he could just represent

himself again by getting a continuance because he was going to actually have to go to trial himself that week, as his own counsel.

Failure to be prompt in representing the Defendant, in violation of a Bar rule.  I don't know how much more prompt I could get.  I tried his case immediately.  And Kareem Todman, the lawyer with my office, who assisted at trial, called Mr. Hill's sister and gave her a heads-up about the fact that he was going to be sentenced to life.  This is a prison releasee reoffender, automatic life case; there will not be discretion. That has been made clear since 2009 so seven years of notice for that is pretty good.  So I think I've covered all his claims for that.

(Ex. A at 326–32).  The trial court provided Petitioner an opportunity to argue his motion (*id.* at 332–34).  The court denied Petitioner's motion to discharge Attorney Brian, noting that Brian "did an excellent job at trial, on very difficult facts for the defense." (*id.* at 334).

As Ground V of Petitioner's initial brief on direct appeal, Petitioner argued the trial court abused it discretion in denying the motion for continuance of trial (Ex. J at 45–49).  The First DCA affirmed the judgment without written opinion (Ex. M).

A fairminded jurist could conclude that the state court's denial of Petitioner's Sixth Amendment claim was reasonable.  As previously noted, Attorney Brian advised the trial court that he had prepared Petitioner's case file and was able to stand in as counsel if called upon to do so.  Attorney Brian's responses to Petitioner's post-trial allegations of incompetence confirm that Brian was thoroughly versed in the law and facts of Petitioner's case, and he was well prepared for trial.

Petitioner has not demonstrated that the state court's adjudication of his Sixth Amendment claim was based upon an unreasonable determination of the facts, or that the adjudication was contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327).   The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended petition for writ of habeas corpus (ECF No. 13) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5th day of August 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.